UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WESLEY N. WAITE, SR.,

                           Plaintiff,

      -against-

STANLEY F. SCHOENBACH, individually and
d/b/a LIFELINKS LLC, ELAINE USCHER,
individually and d/b/a LIFELINKS LLC,
LIFELINKS VRI LLC, individually and d/b/a
LIFELINKS LLC, LIFELINKS LLC,
individually, HEALINC LLC, individually and
d/b/a LIFELINKS LLC, HEALINC LLC,
individually and d/b/a LIFELINKS VRI LLC,
HEALINC TELECOM LLC, individually and
d/b/a LIFELINKS LLC, and HEALINC
TELECOM LLC, individually and d/b/a
LIFELINKS VRI LLC,

                         Defendants.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/29/10

10 Civ. 3439 (RMB)

**OPINION**

## I.   Introduction

On June 30, 2010, Wesley Waite, Sr. ("Plaintiff") filed an amended complaint ("Complaint") against Lifelinks LLC ("Lifelinks"), Lifelinks VRI LLC ("Lifelinks VRI"), Healinc LLC ("Healinc"), and Healinc Telecom LLC ("Healinc Telecom"), all d/b/a Lifelinks and Lifelinks VRI (collectively, "Defendant Companies") and Defendant Companies' individual owners, Stanley Schoenbach ("Schoenbach") and Elaine Uscher ("Uscher") ("Individual Defendants" and, together with Defendant Companies, "Defendants"). Plaintiff alleges, among other things, breach of an employment contract, fraud, fraudulent conveyance, constructive fraud, and anticipatory repudiation/breach, (see Compl., dated July 30, 2010, ¶¶ 82–83, 86, 94–95, 105–07, 114–16, 120–21) and claims, among other things, that Schoenbach and Uscher filed liens against Defendant Companies in an effort to defraud Plaintiff and Defendant Companies'

creditors. (See Compl. ¶¶ 69–74.) Plaintiff further alleges that Defendant Companies "are each the alter ego of one another" and that they "shift money and assets [among] themselves." (Compl. ¶¶ 28, 35.)

On July 1, 2010, Defendants filed a motion to dismiss the Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that: (1) Plaintiff has not stated a claim for breach of contract; (2) "[e]ven assuming, arguendo, that Plaintiff has stated a claim for breach of contract, [that claim] should be dismissed as to all Defendants, except Lifelinks and Healinc Telecom, the only alleged parties to the employment agreement," because the Complaint "fails to plead facts sufficient to pierce the corporate veil of Lifelinks and/or Healinc Telecom"; (3) Plaintiff's fraud claim, which "duplicates the breach of contract claim," is precluded under the "economic loss rule"; (4) Plaintiff's claims for fraudulent conveyance and reasonable attorneys' fees under New York Debtor & Creditor Law ("DCL") Sections 276 and 276-a fail "to state a claim with particularity as required by [Fed. R. Civ. P.] 9(b)"; (5) Plaintiff's allegations of constructive fraud fail to state a claim; and (6) Plaintiff's anticipatory repudiation/breach claim is "duplicative of the breach of contract claim." (Mem. of Law in Support of Defs.' Mot. to Dismiss the Am. Compl., dated July 1, 2010 ("Defs. Mem."), at 5, 8–9, 10, 15, 20–21.)

On March 29, 2010, Plaintiff filed an opposition brief arguing, among other things, that: (1) Plaintiff has established a prima facie case of breach of contract; (2) "Plaintiff's allegations are more than sufficient to 'pierce the corporate veil' of Lifelinks and Healinc Telecom"; (3) "Plaintiff also alleges fraud as a separate cause of action" where "Defendants misrepresented to Plaintiff that Lifelinks . . . was a New York limited liability company"; (4) the Complaint alleges fraudulent conveyance with sufficient particularity; and (5) Plaintiff sufficiently sets forth

2

allegations of constructive fraud to satisfy the pleading requirements. (Pl.'s Mem. of Law in Opp'n to Defs. Mot., dated Aug. 10, 2010 ("Pl. Opp'n"), at 4, 11, 13–14, 18.) Plaintiff fails to address Defendants' argument regarding Plaintiff's anticipatory repudiation/breach claim.

On August 18, 2010, Defendants filed a reply. (See Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss the Am. Compl., dated Aug. 18, 2010 ("Defs. Reply").)

**For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.**

## II.  Background

For purposes of this motion, the allegations of the Complaint are taken as true, "except when they are inconsistent with the documentary record." Germenis v. N.Y. State Dep't of Corr. Servs., No. 08 Civ. 8968, 2009 WL 2877646, at *2 n.1 (S.D.N.Y. Sept. 9, 2009); see also Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 109 (2d Cir. 2003).

On or about July 17, 2008, Plaintiff entered into an employment agreement with Lifelinks and Healinc Telecom to serve as Lifelinks's Chief Operating Officer. (See Compl. ¶¶ 25–27, 39; Aff. of M. Christine Carty in Support of Mot. to Dismiss the Am. Compl., dated July 21, 2010, Ex. B (Employment Agreement, dated July 17, 2008 ("Agreement")).) At the time Plaintiff entered into the Agreement, Uscher represented to Plaintiff that Lifelinks was a New York limited liability company when, in fact, Lifelinks was a Delaware limited liability company. (See Compl. ¶¶ 30, 38; Pl. Opp'n at 15.)

Pursuant to the Agreement, Plaintiff was entitled to an annual salary of $100,000, as well as "certain bonuses, salary increases and equity stakes in the company," which were to be triggered by the company's attainment of "certain revenue targets." (Compl. ¶ 41; Agreement §§ 3.1 and 3.2.) Specifically, Lifelinks "was to pay Plaintiff a $50,000 bonus when revenue

3

'hits' a run rate of $7 million annually; another $50,000 bonus when revenue hits a run rate of $9 million annually; [and] a 2% equity position and a salary increase to $200,000 when revenue reached a run rate of $10 million annually." (Compl. ¶ 42; Agreement at Addendum A.) Although Lifelinks's revenue hit the benchmarks described in the Agreement, Schoenbach informed Plaintiff "that he would not be paying Plaintiff" because Lifelinks "did not have enough money to make such payments." (Compl. ¶¶ 50–51.)

## III.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." South Cherry St., LLC v. Hennessee Grp., LLC, 573 F.3d 98, 110 (2d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). The Court's "review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint." Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 234 (2d Cir. 2008).

Where "New York courts apply a presumption of separateness to corporations and are hesitant to disregard the corporate form," "conclusory allegations of an alter ego are insufficient to survive a motion to dismiss." Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007); see also Kawski v. Johnson & Johnson, No. 04 Civ. 6208, 2005 WL 3555517, at *10 (W.D.N.Y. Dec. 19, 2005).

"To withstand a motion to dismiss . . . a claim for fraudulent [misrepresentation] must comply with the requirements of Rule 9(b)" and "a plaintiff must, [among other things,] allege

4

facts that give rise to a strong inference of fraudulent intent." Miller v. Holtzbrinck Publishers, LLC, No. 08 Civ. 3508, 2009 WL 528620, at *3 (S.D.N.Y. Mar. 3, 2009).

## IV.    Analysis

### (1) Breach of Contract

Defendants argue, among other things, that "the contract itself establishes that there has been no breach" because neither Section 3.1 nor 3.2 of the Agreement "state[s] that Plaintiff is entitled to receive a bonus, equity position or salary increase." (Defs. Mem. at 5–6.) Plaintiff counters, among other things, that the Complaint satisfies the elements for a breach of contract claim because, among other reasons, the Agreement "clearly and unambiguously shows that Plaintiff is entitled to additional compensation under the contract," and "even assuming . . . that the contract is ambiguous[,] . . . all contractual ambiguity is resolved in favor of the non-moving Plaintiff." (Pl. Opp'n at 4–6.)

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

Plaintiff sets forth a claim for breach of contract sufficient to withstand a motion to dismiss. First, Plaintiff alleges that "on or about July 17, 2008, Plaintiff and Defendants entered into an employment agreement." (Compl. ¶ 24.) Second, Plaintiff alleges that "Plaintiff's performance was superior during the course of [his] employment with Defendants." (Compl. ¶ 57). Third, Plaintiff alleges that Defendants breached Sections 3.1 and 3.2 of the Agreement by, among other things, "not paying Plaintiff the agreed upon bonuses, salary, and equity position." (Compl. ¶ 41, 59.) Fourth, Plaintiff alleges that "[a]s a result . . . Plaintiff has been

damaged in an amount to be determined at trial," and that under the contract, he was and is now entitled to, among other things, a 4% equity position in Defendant Companies, a $100,000 bonus and a salary increase to $200,000. (See Compl. ¶¶ 47, 84.)

"Construing [Plaintiff's] allegations liberally, and pending discovery, [Plaintiff], at this stage of the proceeding, has adequately pled the required elements of a breach of contract claim." Diversified Carting, Inc. v. City of New York, 423 F. Supp. 2d 85, 97 (S.D.N.Y. 2005) (citing Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc., 341 F. Supp. 2d 258, 271 (S.D.N.Y. 2004).

### (2) Piercing the Corporate Veil

Defendants argue, among other things, that the "allegations, even if true, do not suggest that any Defendant abused the corporate form of Lifelinks and/or Healinc Telecom . . . , improperly undercapitaliz[ed] Lifelinks or Healinc Telecom, or fail[ed] to deal at arm's length or observe corporate formalities" sufficient to pierce the corporate veil. (Defs. Mem. at 23.) Plaintiff counters, among other things, that the Complaint sufficiently alleges that "Schoenbach and . . . Uscher each controlled all of the Defendant [C]ompanies," that the Defendant Companies "are each the alter ego of one another," and that they "shift money and assets [among] themselves in an effort to defraud creditors." (Pl. Opp'n at 16.)

Plaintiff's unsupported assertions that Schoenbach and Uscher, as officers and owners of the Defendant Companies, "exercised complete dominion and control" over the Defendant Companies and "created the network of . . . Defendant Companies . . . to defraud creditors" (Compl. ¶¶ 35, 38, 63) are "purely conclusory allegations [that] cannot suffice to state a claim based on veil-piercing or alter ego liability, even under the liberal notice pleading standard." In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 416 (S.D.N.Y. 2003); see also

Kashfi v. Phibro-Salomon, Inc., 628 F. Supp. 727, 733 (S.D.N.Y. 1986); Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 132 (S.D.N.Y. 1992). Plaintiff's further allegations that Defendants "operate at the same location and share employees, officers, owners, and bank accounts" (Compl. ¶¶ 63, 66, 37), without more, are likewise insufficient to pierce the corporate veil. See Kalin, 526 F. Supp. 2d at 404 (allegations of a common address, common ownership, and common principals, without more, are insufficient to plead piercing the corporate veil). To the extent that Plaintiff alleges that "Defendants shift[] money and assets between themselves . . . in an effort to defraud creditors" (Compl. ¶ 37), "mere allegations of fraud in a complaint are insufficient to justify piercing the corporate veil." N.Y. State Teamsters Conference Pension & Ret. Fund v. Hoh, 554 F. Supp. 519, 525 (N.D.N.Y. 1982).

"In short, [P]laintiff has not established that the wrong allegedly committed against him – the breach of contract – is related to any misuse of the corporate form," Alter v. Bogoricin, 07 Civ. 0662, 1997 WL 691332, at *5 (S.D.N.Y. Nov. 6, 1997), and his claim must be dismissed. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).

### (3) Fraud

Defendants argue, among other things, that "Schoenbach's representation to Plaintiff that he would be timely paid all of his compensation and equity as provided for under the . . . Agreement" is not a misrepresentation extraneous to the Agreement and that Plaintiff does not "allege that Plaintiff suffered any special damages" as a result of Uscher's alleged misrepresentation that Lifelinks was a New York limited liability company. (Defs. Mem. at 11.) Plaintiff counters, without responding to Defendant's first argument, that the tort damages arising from Uscher's misrepresentation that "Lifelinks was a New York limited liability

7

company" "[are] separate from the specific damages stemming from the breach." (Pl. Opp'n at 15.)

Under New York law, "to maintain a claim of fraud in addition to a standard claim for breach of contract, a plaintiff must either: (a) demonstrate a legal duty separate from the duty to perform under the contract; (b) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (c) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bloom v. Rock, No. 06 Civ. 6301, 2010 WL 2267468, at *7 (S.D.N.Y. May 27, 2010) (citing Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

Plaintiff does not "allege any sort of special relationship among the parties or other situation that would give rise to a legal duty apart from the parties' contractual relationships," Bezuszka v. L.A. Models, Inc., No. 04 Civ. 7703, 2006 WL 770526, at *13 (S.D.N.Y. Mar. 24, 2006), and the "alleged misrepresentation [that Plaintiff would be 'timely paid . . . as provided for under the contract'] was neither collateral nor extraneous to the agreements; rather it was related and intrinsic to [the Agreement]." Bear Sterns Funding, Inc. v. Interface Grp.-Nev., Inc., 361 F. Supp. 2d 283, 311 (S.D.N.Y. 2005).

Plaintiff's conclusory suggestion that he has sufficiently alleged damages because "Defendants may now attempt to apply Delaware's corporate friendly laws to the instant case" is unpersuasive. (Pl. Opp'n at 15; Defs. Reply at 8.) In fact, the terms of the Agreement provide that the Agreement shall be governed by the laws of the State of New York. (Defs. Reply at 8; Agreement § 11.4.) Because Plaintiff fails to allege a non-contractual special relationship or any damages related to Defendants' alleged misrepresentation, Plaintiff's fraud claim is dismissed.

See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 344 (2005); see also Shred-It, USA, Inc. v. Mobile Data Shred, Inc., 202 F. Supp. 2d 228, 238 (S.D.N.Y. 2002).

### (4) Fraudulent Conveyance/Reasonable Attorneys Fees

Defendants argue, among other things, that Plaintiff's claim for fraudulent conveyance fails because the "Complaint does not present any facts to suggest that the . . . liens were filed with the fraudulent intent of placing assets beyond the reach of creditors." (Defs. Mem. at 10, 18.) Plaintiff counters, among other things, that "[t]he Complaint contains direct allegations of fraudulent intent, particularly describing Defendants' scheme to defraud creditors by shifting money and asset[s] between Defendants . . . and filing . . . liens to defraud Plaintiff and others from debts that were owed to them." (Pl. Opp'n at 11.)

"A party seeking to set aside a fraudulent conveyance under DCL § 276 must plead an actual intent to defraud with particularity sufficient to meet the heightened standard of [Fed. R. Civ. P.] 9(b)." Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc., No. 08 Civ. 4319, 2009 WL 1941862, at *6 (S.D.N.Y. July 7, 2009). And, "pursuant to DCL [§] 276-a, attorneys' fees can be recovered in an action to set aside a fraudulent conveyance [only] if the transfer 'is found to have been made by the debtor and received by the transferee with actual intent' to delay, hinder or defraud the creditor." Savitsky v. Mazzella, No. 98 Civ. 9051, 2004 WL 2454120, at *2 n.2 (S.D.N.Y. Nov. 1, 2004) (quoting DCL § 276-a).

Because Plaintiff's claim of fraudulent conveyance fails to plead fraudulent intent with the particularity required by Fed. R. Civ. P. 9(b), his claim must be dismissed. See Cargo Partners AG v. Albatrans Inc., 207 F. Supp. 2d 86, 116 (S.D.N.Y. 2002). Plaintiff does not "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, or the consideration paid." United Feature Syndicate, Inc. v. Miller

9

Features Syndicate, Inc., et al., 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002) (quoting Luce v. Edelstein, 802 F.2d 49, 54 n.1 (2d Cir. 1986)); Mills v. Everest Reinsurance Co., 410 F. Supp. 2d 243, 248 (S.D.N.Y. 2006) ("Allegations which fail to specify the time, place, speaker, and sometimes even the content of alleged misrepresentations," lack the "particulars" required by Rule 9(b).) And, the Complaint does not allege any facts to support Plaintiff's conclusory allegations that "the Individual Defendants created the network of the Defendant Companies in order to defraud creditors," or that "Defendant Companies gave Defendant Uscher a lien on all of the assets of the Defendant Companies in order to defraud the creditors of Defendants." (Compl. ¶¶ 35–37); Cargo Partners, 207 F. Supp. 2d at 116 ("[C]onclusory allegations of scienter are sufficient [only] if supported by facts giving rise to a strong inference of fraudulent intent."); see also Drenis v. Haligiannis, 452 F. Supp. 2d 418, 429 (S.D.N.Y. 2006); Sullivan v. Kodsi, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005).

Because "a finding of actual intent to hinder, delay or defraud creditors is required before attorneys' fees will be awarded," Neshewat v. Salem, 365 F. Supp. 2d 508 (S.D.N.Y. 2005), Plaintiff's claim for reasonable attorneys' fees under § 276-a is also dismissed. Id.

### (5) Constructive Fraud

Defendants argue, among other things, that the Complaint "does not identify any specific conveyances between the Defendants that lacked fair consideration or that rendered any Defendant either insolvent or unable to pay a debt." (Defs. Mem. at 20.) Plaintiff counters, among other things, that "Defendants' transfer of assets between Defendant Companies was made without fair consideration," and that "upon information and belief, Defendants were insolvent at the time of the transfer of the conveyance and/or rendered insolvent by the transfer." (Pl. Opp'n at 14.)

10

A plaintiff making a constructive fraud claim under DCL § 273 must allege "that (1) there was a conveyance without fair consideration; (2) the transferor was 'insolvent at the time of the conveyance or will be rendered insolvent by the transfer in question'; and (3) plaintiff is a creditor of the transferor." Network Enter, Inc. v. Reality Racing, Inc., No. 09 Civ. 4664, 2010 WL 3529237, at *9 (S.D.N.Y. Aug. 24, 2010) (citing Smith v. Pali Capital, Inc., No. 06 Civ. 3362, 2006 WL 3240578, at *4 (S.D.N.Y. Nov. 7, 2006)). "Because intent to defraud is not an element of constructive fraudulent conveyances, such claims, as opposed to claims of actual fraud, are not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b)." Pali, 2006 WL 3240578, at *4.

Plaintiff's allegations that the "transfers were made without fair consideration" and "rendered Defendants insolvent" are conclusory allegations that are insufficient to withstand a motion to dismiss. Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000). Such allegations, made entirely on information and belief, do not state facts upon which Plaintiff's belief may be founded. See Cargo Partners, 207 F. Supp. 2d at 116.

### (6) Anticipatory Repudiation/Anticipatory Breach

Defendants argue that "[s]ince the [Complaint's] allegations are predicated on past breaches, the purported anticipatory repudiation count is identical to the breach of contract claim and should be dismissed." (Defs. Mem. at 10.) Plaintiff fails to address this argument.

Plaintiff's claim for anticipatory repudiation/anticipatory breach is dismissed because, among other reasons, "Plaintiff has brought this action for breach of contract [and] cannot simultaneously pursue a claim for anticipatory breach." Verus Pharm., Inc. v. Astrazeneca AB, No. 09 Civ. 5660, 2010 WL 3238965, at *12 (S.D.N.Y. Aug. 16, 2010); see also Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002).

11

## IV. Conclusion and Order

For the reasons set forth above, Defendants' motion to dismiss [#11] is granted in part and denied in part. Defendants' motion to dismiss the claim for breach of contract against Lifelinks and Healinc Telecom is denied. Defendants' motion to dismiss the claims for piercing the corporate veil, fraud, fraudulent conveyance, and constructive fraud against Lifelinks and Healinc Telecom is granted. Defendants' motion to dismiss the claims against Schoenbach, Uscher, Lifelinks VRI, and Healinc is granted.

Dated: New York, New York
October 29, 2010

*Richard M. Berman*

**RICHARD M. BERMAN, U.S.D.J.**