USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WESLEY N. WAITE, SR.,                       :
                                            :
                 Plaintiff,                 :     REPORT AND
    -v.-                                    :     RECOMMENDATION
                                            :
STANLEY F. SCHOENBACH, individually and     :     10 Civ. 3439 (RMB) (JLC)
d/b/a LIFELINKS LLC, ELAINE USCHER,         :
individually and d/b/a LIFELINKS LLC,       :     ECF Case
LIFELINKS VRI LLC, individually and d/b/a   :
LIFELINKS LLC, LIFELINKS LLC, individually, :
HEALINC LLC, individually and d/b/a LIFELINKS :
VRI LLC, HEALINC LLC, individually and d/b/a :
LIFELINKS VRI LLC, HEALINC TELECOM LLC,     :
individually and d/b/a LIFELINKS LLC, and   :
HEALINC TELECOM LLC, individually and d/b/a :
LIFELINKS VRI LLC,                          :
                                            :
                 Defendants.                :
------------------------------------------------------------X
------------------------------------------------------------X
                                            :
LIFELINKS LLC and HEALINC TELECOM           :
LLC,                                        :
                                            :
        Counterclaim-Plaintiffs/Defendants, :
                                            :
    -v.-                                    :
                                            :
WESLEY N. WAITE, SR.,                       :
        Counterclaim-Defendant/Plaintiff.   :
                                            :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Richard M. Berman, United States District Judge:**

Plaintiff Wesley Waite ("Plaintiff") brought this action alleging breach of his employment contract with Defendants LifeLinks LLC ("LifeLinks") and Healinc Telecom LLC (collectively, "Defendants"). Defendants asserted counterclaims against Plaintiff for breach of

USDC SDNY DATE SCANNED 8/5/11

1

contract, breach of fiduciary duty, tortious interference with contract and prospective relations, unfair competition, and violation of the Computer Fraud & Abuse Act. On January 14, 2011, after a lengthy settlement conference before me, the parties reached a settlement agreement that was set forth on the record. Thereafter, on January 25, 2011, the Court entered an order discontinuing the action. Plaintiff now moves to set aside the settlement agreement, vacate the order of discontinuance, and restore the action to "active" status, alleging fraud or alternatively mutual mistake. Defendants cross-move to enforce the settlement agreement. For the following reasons, I recommend that the Court deny Plaintiff's motion to set aside the settlement agreement and grant Defendants' cross-motion to enforce the settlement agreement.[1]

## I. BACKGROUND

### A. The Settlement Conference and its Aftermath

Plaintiff, the former chief operating officer of LifeLinks, initially brought this action to recover thousands of dollars of unpaid compensation under his employment agreement with Defendants. (Plaintiff's Memorandum of Law in Support of the Motion to Set Aside Settlement ("Pl. Mem.") at ¶ 3) (Dkt. No. 32). Defendants brought several counterclaims arising out of Plaintiff's allegedly fraudulent misconduct during his employment with Defendants, and Plaintiff's alleged conspiracy with Thomas Dafnos ("Dafnos"), president of URelay, a competitor of Defendants, to ruin Defendants' business. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Set Aside the Settlement Agreement, Vacate the Order of Discontinuance and Re-Open Action and in Support of Defendants' Cross-Motion to Enforce Settlement ("Defs.' Mem.") at 2) (Dkt. No. 41).

---

[1] Absent consent by the parties pursuant to 28 U.S.C. § 636(c) to proceed before a magistrate judge, where the motion presented is of a dispositive nature, such as enforcing (or vacating) a settlement, as here, a magistrate judge must issue a report and recommendation subject to de novo review. See 28 U.S.C. § 636(b)(1)(B); Schommer v. McKinney Towing, Inc., Civ. A. No. 88-1687, 1991 WL 68468, at *2 n.1 (E.D. La. Apr. 22, 1991), aff'd, 952 F.2d 400 (5th Cir. 1992).

On January 14, 2011, the parties attended a settlement conference before me. (Id.). During the conference, Defendants produced an email between Plaintiff and Dafnos in which Plaintiff allegedly outlined a plan to undermine Defendants' business. (Pl. Mem. ¶ 7). Plaintiff claims that he did not recall sending the email, and repeatedly told his attorney during the conference that he believed the email to be "contrived." (Affidavit of Plaintiff Wesley N. Waite, Sr. dated April 28, 2011 ("Waite Aff.") ¶ 3) (Dkt. No. 32-3). Nevertheless, because the email would have undercut Plaintiff's defense against the counterclaims, Plaintiff ultimately settled for $8,500, well below his initial demand of $400,000. (Pl. Mem. ¶¶ 6, 8, 9). The settlement included mutual releases of each party's conduct up to the date of settlement, and was intended to resolve all claims and counterclaims pending in the lawsuit. (Defs. Mem. at 3); (Transcript of Civil Cause for Settlement Conference ("Settlement Tr.") 2:14-15, Jan. 14, 2011) (Dkt. No. 32-5).

Following the conference, the parties placed the terms of the settlement agreement on the record. (Settlement Tr. 2:8-12). As agreed to by the parties, I recited the terms of the agreement, and counsel for both parties affirmed that those were the terms as agreed upon during the settlement conference. (Id. 2:13-8:20). The parties confirmed that there were no other terms to be put on the record, and then agreed to be bound by the terms that had been set forth on the record. (Id. 10:2-3, 8:4-20). I noted that the parties would memorialize the terms of their agreement and submit it to Judge Berman within 30 days of the agreement as stated on the record. (Id. 9:7-11). Defendants sent Plaintiff's counsel a proposed draft of the settlement agreement on January 21, 2011; however, Plaintiff's counsel never responded to the proposed written agreement. (Defs'. Mem. at 3). On January 25, 2011, before any submission had been made by the parties, Judge Berman entered an order of discontinuance in light of his having been

3

advised of the settlement agreement that the parties had reached. (Dkt. No. 29).

Almost three months later, on April 18, 2011, Plaintiff's counsel received a letter from an attorney associated with related litigation in South Dakota. (Pl. Mem. ¶13). The letter stated that the email presented during the settlement conference between Plaintiff and Defendants "w[as] not genuine or authentic in form or substance." (Letter from Jeff L. Bratkiewicz Re: Interpreter Services, Inc. v. BTB Technologies, Inc. and Thomas M. Dafnos at 2 (attached to Pl. Mem.)) (Dkt. No. 32-4). This letter prompted Plaintiff to file his motion to set aside the settlement agreement. (Waite Aff. ¶ 11).

### B. The Current Motions

On May 2, 2011, almost four months after the settlement conference, Plaintiff moved to set aside the settlement agreement on account of Defendants' alleged misrepresentation of this email. (Pl. Mem. ¶ 2). Plaintiff contends that relief is warranted because Defendants knowingly provided fraudulent information upon which he relied to his detriment in settling his case. (Id. ¶¶ 9, 20). In the alternative, Plaintiff claims that the settlement agreement should be set aside based on the doctrine of mutual mistake. (Id. ¶ 23). Following a conference with the Court, this application was referred to me on June 2, 2011. (Dkt. No. 35).

On July 7, 2011, Defendants cross-moved to enforce the settlement agreement. (Dkt. No. 38). Defendants argue that Plaintiff has not demonstrated reasonable reliance on Defendants' alleged misrepresentations, nor has he established that Defendants knew that the email in question was fraudulent. (Defs.' Mem. at 4-5). In addition, Defendants contend that, assuming the email was fraudulent, the doctrine of mutual mistake does not apply because Plaintiff, by his own account, believed that the email was fraudulent throughout the settlement conference. (Id. at 8). Finally, Defendants argue that Plaintiff should be estopped from vacating the settlement

4

agreement because Defendants have relied upon the agreement to their detriment. (Id. at 9-10). Moreover, because the parties intended to be bound by their oral settlement agreement, and because Defendants claim to have partially performed under the settlement agreement by ceasing their investigation and prosecution of their counterclaims against Plaintiff, Defendants request that the Court grant their cross-motion to enforce the settlement agreement. (Id. at 10-11).

Plaintiff filed a memorandum of law in further support of his motion and in opposition to Defendants' cross-motion on July 21, 2011. ("Pl. Opp'n Mem.") (Dkt. No. 42). In addition, Plaintiff submitted an order from the District of South Dakota in which Magistrate Judge Simko stayed proceedings in the related South Dakota action in order to investigate the authenticity of the email in question. (Order Entered by the Honorable John E. Simko, United States Magistrate Judge, Interpreter Servs., Inc. v. BTB Techs., Inc., No. CIV. 10-4007 (D.S.D. June 30, 2011)). According to Plaintiff, Judge Simko's order suggests it is likely that the email was, in fact, fabricated. (Pl. Opp'n ¶ 6). Plaintiff reiterates his arguments regarding fraud and mutual mistake as grounds to set aside the settlement agreement. (Id. ¶¶ 6-9, 10-11). In the alternative, Plaintiff requests that the Court stay the pending motion until the issue of fabrication is decided in the South Dakota action. (Id. ¶ 7).[2]

## II. DISCUSSION

### A. Standard of Review

Plaintiff has moved to set aside the settlement agreement pursuant to Federal Rule of Civil Procedure 60(b), which provides, in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect; [or] . . .
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or

---

[2] Plaintiff equivocates about the need for a stay, noting that his claim of mutual mistake stands on its own and can thus be adjudicated independently from the fraud claim. (Id. ¶ 10).

misconduct by an opposing party.

Fed. R. Civ. P. 60(b)(1),(3).

Because this is a diversity case, the Court applies the substantive law of the forum state, here New York, to determine whether Plaintiff has satisfied the elements required to set aside the settlement agreement. See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 n.23 (2d Cir. 2004). Under New York law, a settlement agreement is interpreted according to general principles of contract law. Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). Settlement agreements are strongly favored by New York courts and "may not be lightly cast aside." Willgerodt ex rel. Majority Peoples' Fund for 21st Century, Inc. v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). It is well-settled that a settlement agreement is presumptively binding and conclusive. Powell, 497 F.3d at 128; Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." Powell, 497 F.3d at 128 (citation omitted). "Parties [such as those here] may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." Id. (citing Winston v. Mediafare Ent'mt Corp., 777 F.2d 78, 80 (2d Cir. 1985)). Even if the agreement is never reduced to writing, it is enforceable as long as it was "voluntary, clear, explicit, and unqualified" when entered on the record in open court. Id. (citing Role v. Eureka Lodge No. 434, 402 F.3d 314, 318 (2d Cir. 2005)).

In order to overcome the presumption of enforceability and set aside a settlement agreement under New York law, a movant bears the burden of establishing either (1) unilateral mistake coupled with fraudulent concealment by the knowing party, or (2) mutual mistake. Chimart Assocs. v. Paul, 66 N.Y.2d 570, 573 (1986); see also Raghavendra v. Trustees of

6

Columbia Univ., 686 F. Supp. 2d 332, 341 (S.D.N.Y. 2010). Because Plaintiff has not demonstrated either fraud or mutual mistake, I recommend that the Court deny Plaintiff's motion to set aside the settlement agreement.

### B. There Is No Basis To Set Aside The Settlement Agreement

#### 1. Plaintiff Has Not Demonstrated Fraud

Plaintiff argues that the Court should set aside the settlement agreement because Defendants induced the agreement by presenting a fraudulent email during the settlement conference. In order to demonstrate fraud, a movant "must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the [movant] and resulting injury." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). The Second Circuit has made it clear that "each element of a fraud claim must be shown by clear and convincing evidence." Banque Arabe et Internationale d'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995); Davimos v. Halle, No. 03 Civ. 9199 (JGK), 2006 WL 859368, at *3 (S.D.N.Y. Mar. 31, 2006).

In this case, the Court need not determine whether the email presented during the settlement conference was authentic or not because even if it was fraudulent, Plaintiff has presented neither any admissible evidence to suggest that Defendants themselves fabricated the email, nor any evidence to suggest that Defendants knew that another party had fabricated the email.[3] Defendants assert that they obtained the email, along with several other documents, from

---

[3] In his motion, Plaintiff calls into question the credibility of LifeLink's CEO, Stanley Schoenbach, by alleging that Schoenbach has an "extensive history" of fraud, and speculates that Schoenbach "very well likely" created the email. (Pl. Mem. ¶¶ 20-22). As a threshold matter, this is likely inadmissible character evidence under Federal Rule of Evidence 404(b). See, e.g., Hynes v. Coughlin, 79 F.3d 285, 290 (2d Cir. 1996) (evidence of other acts not admissible to prove actor had certain character trait). In any event, the evidence is insufficient to establish that Defendants themselves fabricated the email, and Defendants have denied doing so. See Defs.' Mem. at 5 n.1.

7

one of the parties to related litigation pending in the District of South Dakota. (Defs.' Mem. at 5 n.1). The documents received by defense counsel bore the indicia of reliability, including Bates numbers. (Id.). Though Plaintiff points out that a discrepancy exists between the Bates stamps that appear on the purportedly fraudulent email and the original email associated with those Bates numbers (Waite Aff. ¶ 9), Defendants would have had no reason to investigate the accuracy of the Bates numbering at the time they received the email, and it is undisputed that Plaintiff failed to notify Defendants of his concerns about the email at the time of the settlement conference. (Defs.' Mem. at 5). Absent clear and convincing evidence to suggest Defendants knew the email was fraudulent at the time of the settlement conference, Plaintiff cannot prevail on his theory of fraud.

In addition, Plaintiff has not demonstrated justifiable reliance on the email in settling his case. New York law considers one party's reliance on another party's documentation reasonable if the documents "would not, on their face, have alerted [the plaintiff] to potential fraud." JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 409 (S.D.N.Y. 2004). Where a plaintiff sees "red flags" and yet fails to investigate the accuracy of another party's documentation, the plaintiff's reliance on the documentation is unreasonable. Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98-99 (2d Cir. 1997) (rejecting fraud claim because plaintiff unreasonably relied on documentation that "should have raised more than one eyebrow"). Plaintiff admits that when he was presented with the email during the settlement conference he was "shocked," and repeatedly told his attorney that he had no recollection of authoring the email. (Waite Aff. ¶ 3). Plaintiff thus makes it clear that the document, on its face, alerted him to potential fraud. Nevertheless, Plaintiff chose to settle for what he now characterizes as an unsatisfactory amount without investigating the accuracy of the email. He could have chosen not to settle his case in

8

light of the misgivings he apparently had, but opted not to do so. Plaintiff's ultimate "faith in the legal system," which allegedly led him to disregard his "nagging feeling" that the email was fabricated (Id. ¶ 4), does not excuse his failure to raise this concern at the settlement conference. Put another way, Plaintiff cannot have second thoughts and succeed in upending the settlement. See Willgerodt, 953 F. Supp. at 560 (declining to set aside settlement agreement reached in open court and noting that "[a]fterthought or change of mind are not sufficient to justify rejecting a settlement" (citation omitted)). Ultimately, Plaintiff's reliance on the email, when he nonetheless suspected fraud, was unreasonable. Schlaifer, 119 F.3d at 98-99. As such, he cannot prevail on a theory of fraud.[4]

### 2. Plaintiff Has Not Demonstrated Mutual Mistake

Plaintiff likewise cannot succeed under a theory of mutual mistake because he has not unequivocally established that the contested email was inauthentic, nor has he unequivocally established that he believed it to be authentic during the settlement conference. In order to succeed on a claim of mutual mistake, a movant bears the burden in showing "in no uncertain terms . . . that a mistake exists." Loewenson v. London Mkt. Cos., 351 F.3d 58, 61 (2d Cir. 2003). Assuming Plaintiff believed the email was authentic, he must demonstrate "in no uncertain terms" that the email was, in fact, fabricated. However, as Defendants still maintain that the email is authentic, the issue of fabrication remains unresolved.[5] Plaintiff therefore

---

[4] Plaintiff says nothing about the June 3, 2010 letter from him on the letterhead of Defendants' competitor, URelay, which he wrote to a group of investors shortly after he was terminated. In the letter, he stated that he and Defendants' employees were "work[ing] quietly behind the scenes" to set up his new company. He also fails to mention the June 30, 2010 email from Defendants' former general counsel to Plaintiff and Dafnos regarding the finalization of their "Interestholder Agreements" and employment agreements. Both of these communications also formed the basis for the counterclaims and were provided to Plaintiff at the settlement conference. They were both arguably consistent with the email Plaintiff now contests and would have also presumably been reasons for Plaintiff's decision to settle as he did. See Declaration of M. Christine Carty dated July 7, 2011, Exs. B, C (Dkt. No. 39).

[5] The issue of fabrication has been raised in the South Dakota litigation, where Magistrate Judge Simko has

cannot unequivocally demonstrate that either party was mistaken as to the authenticity of the email.

However, as previously noted, the Court need not determine whether the email is fabricated because even if it was, and even if Defendants erroneously believed that it was authentic, Plaintiff has not demonstrated that he shared the same erroneous belief. A motion to set aside a settlement agreement based on mutual mistake must fail if, at the time of the settlement agreement, the parties did not "share a substantially similar erroneous belief as to the facts." Yurman Design, Inc. v. Garden Jewelry Mfg. Corp., No. 99 Civ. 10507 (TPG), 2003 WL 22047896, at *3 (S.D.N.Y. Aug. 29, 2003). Plaintiff admits throughout his affidavit that he "did not have any recollection of authoring [the] email," that he thought the email "must have been contrived," and that he had the "nagging feeling that the email was fabricated." (Waite Aff. ¶ 1). These "nagging feelings" presumably continued even after the parties left the settlement conference, as the very next day, Plaintiff commenced a search through his email account to determine whether he had ever sent the email. (Id. at 2). Assuming the email was, in fact, fabricated, it is clear that Plaintiff was never mistaken about its authenticity.[6]

Knowing that the authenticity of the email was uncertain, Plaintiff then, of his own accord, chose to settle rather than investigate the email's authenticity. In doing so, Plaintiff gave up his opportunity to further question the authenticity of the email. See Travelers Indem. Co. of Il. v. CDL Hotels USA, Inc., 322 F. Supp. 2d 482, 496 (S.D.N.Y. 2004) ("[n]either reformation nor rescission is permitted if the parties entered an agreement based upon uncertain or contingent

---

stayed the proceedings in order to explore the authenticity of the email. See Interpreter Servs., Inc. v. BTB Techs., Inc., No. CIV. 10-4007, 2011 WL 2601740, at *2 (D.S.D. June 30, 2011).

[6] Because Plaintiff would not be able to demonstrate either fraud or mutual mistake even if the email was fabricated, the Court need not consider Plaintiff's informal request to stay these proceedings pending resolution of the South Dakota litigation.

events and the claim is based upon mistake as to the outcome of such an event."); Beecher v. Able, 441 F. Supp. 426, 430 (S.D.N.Y. 1977) (denying rescission where plaintiff claimed mistake as to fact uncertain at time of agreement). Plaintiff may not rescind his decision to settle simply because he now has evidence that may suggest that the email was fabricated. See United States v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, []he cannot be relieved of such a choice merely because [his] assessment of the consequences was incorrect."); Cons. Edison Co. of N.Y. v. Fyn Paint & Lacquer Co., Inc., No. CV-00-3764 (DGT), 2008 WL 852067, at *9 (E.D.N.Y. Mar. 28, 2008) (settlement not voidable because parties assumed risk that future events would alter satisfaction with agreement).

Because Plaintiff has not satisfied the elements of either fraud or mutual mistake, the Court should deny his motion to set aside the settlement agreement.[7]

### C. The Settlement Agreement Is Enforceable

Defendants cross-move to enforce the settlement agreement placed on the record on January 14, 2011. The Court is obligated to enforce the agreement as entered on the record if it satisfies the test for enforceability. See, e.g., Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974) ("[T]he district court had not only the power but the duty to enforce a settlement agreement which it had approved."); Lindner v. Am. Exp. Corp., No. 06 Civ. 3834 (JGK), 2007 WL 1623119, at *3 (S.D.N.Y. June 5, 2007). While the Second Circuit has not definitively ruled whether state or federal law applies in determining the enforceability of an oral settlement agreement, both the Second Circuit and district courts in New York regularly apply New York law in diversity cases to determine whether a settlement agreement should be

---

[7] The Court need not reach the issue of estoppel because Plaintiff has not otherwise demonstrated grounds to vacate the settlement agreement.

enforced. See, e.g., Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996) ("We assume, without deciding, that New York law provides the rule of decision for determining the validity of the oral settlement agreement."); Powell, 497 F.3d at 129 n.1 (applying New York law and federal common law interchangeably to determine enforceability of oral settlement); Silas v. City of New York, 536 F. Supp. 2d 353, 358 (S.D.N.Y. 2008). In any case, the Second Circuit has repeatedly observed that there is no meaningful substantive difference between federal and New York law with respect to enforceability. See, e.g., Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997) ("[W]e find there is no material difference between the applicable state law or federal common law standard."); Monaghan, 73 F.3d at 1283 ("[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule.").

The parties in this case have not memorialized the settlement agreement in writing (although it had been their expressed intention to do so). The question thus becomes whether the Court is obligated to enforce the parties' oral settlement agreement as entered on the record on January 14, 2011. In determining whether an oral agreement is enforceable in the absence of a fully executed document, courts ask whether the "words and deeds" of the parties manifest the parties' intent to be bound by their agreement. See Winston, 777 F.2d at 80. In Winston, the Second Circuit specified four factors that should guide the court's inquiry into whether the parties intended to be bound by an oral settlement agreement:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and, (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Winston, 777 F.2d at 80. "No single factor is decisive, but each provides significant guidance."

12

Ciaramella, 131 F.3d at 323.

The first Winston factor weighs in favor of enforcement, as the parties did not expressly reserve the right not to be bound in the absence of a written agreement. To the contrary, following the settlement conference, I recited the terms of the agreement on the record, and asked, "Do you agree that these terms as discussed on the record are the terms of the settlement and that you and your client[s] agree to be bound by them?" (Settlement Tr. 8:6-9). All parties answered this question in the affirmative. (Id. 8:10-20). Although I noted that the parties had advised the Court that they intended to memorialize the terms of the settlement in writing (Id. 9:14-18), the parties expressly indicated that they intended to be bound by the terms as they were orally recited on the record. (Id. 8:4-20). The parties never indicated that this intention was contingent on the agreement being reduced to writing. These circumstances strongly weigh in favor of enforcing the oral settlement agreement. See e.g. Aguiar v. State, No. 06 Civ. 3334 (THK), 2008 WL 4386761, at *5 (S.D.N.Y. Sept. 25, 2008) ("[s]imply because the parties contemplated that the agreement would be reduced to writing does not indicate that they had agreed, either explicitly or implicitly, not to be bound until a written agreement was signed.") (citing cases)).

The second Winston factor—whether the moving party has partially performed the agreement—raises a closer question. Partial performance can be found when "one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." Ciaramella, 131 F.3d at 325. Defendants here have partially performed their end of the settlement agreement by ceasing their investigation and prosecution of their counterclaims. See Declaration of Stanley Schoenbach dated June 30, 2011, ¶ 8 (Dkt. No.

13

40).[8] See also Alvarez v. City of New York, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001) ("There also was partial performance of the agreement in the sense that both sides, relying on the apparent settlement, did not resume active litigation of the case."). However, Plaintiff did not truly "accept" this performance, since he has requested to vacate the settlement agreement, thus inviting Defendants to re-open the prosecution of their counterclaims. Moreover, there is nothing in the record to indicate whether Defendants have paid Plaintiff the $8500 agreed to as part of the settlement. Accordingly, this factor does not tip the balance in either direction.

The third Winston factor—whether all of the terms of the agreement were agreed upon—more clearly favors enforcement. The record suggests that no material terms were meant to be left open to negotiation following the settlement conference. After the parties agreed to be bound by the terms as discussed on the record, I asked, "Does counsel know of anything else that we need to put on this record today?" (Id. 8:21-22). The parties addressed the issue of the extension of time with respect to the amended counterclaims and then indicated that they had nothing further to put on the record. (Id. 10:2-3). Because the parties indicated that all terms had been agreed upon, the oral settlement agreement satisfies the third Winston factor.

The fourth Winston factor is whether the agreement is of the type that is usually committed to writing. New York statutory law governs whether an agreement is one that must be committed to writing. Under New York law:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

---

[8] Schoenbach attests that "[i]n reliance on Plaintiff's representations during the mediation and to the Court on January 14, the Companies stopped pursuing their counterclaims against Plaintiff. The Companies ceased an intensive search for documents and a technical investigation into Plaintiff's and his co-conspirators' tampering with the Companies' [video relay and remote interpreting] systems. The Companies also chose not to interview certain, now former, employees that it [sic] had identified as potentially having personal knowledge concerning the counterclaims."

N.Y. C.P.L.R. § 2104 (McKinney 2003). Under C.P.L.R. § 2104, a "voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed." Powell, 497 F.3d at 129 (quoting Role, 402 F.3d at 318). Thus, under New York law, settlement agreements made on the record are not "the type of contract that is usually committed to writing." Winston, 777 F.2d at 80. Moreover, "[a] settlement stated on the record is one of the strongest and most binding agreements in the field of the law and is thus entitled to substantial deference." Medinol Ltd. v. Guidant Corp., 500 F. Supp. 2d 345, 353 (S.D.N.Y. 2007). Here, the parties manifestly agreed to the terms as recited in open court. (Settlement Tr. 8:10-12). This agreement, without reservation, on the record in open court effectively "counts as a writing." Lopez v. City of New York, 242 F. Supp. 2d 392, 394 (S.D.N.Y. 2003) (citation omitted). As such, the final Winston factor weighs in favor of enforcing the settlement agreement, despite the fact that parties never reduced the agreement to writing.

Because the oral settlement agreement satisfies at least three of the four Winston factors, and considering the parties' expressed intention was to be bound by the agreement set forth on the record, Defendants are entitled to an order enforcing the agreement.

### III. CONCLUSION

For all these reasons, the Court should deny Plaintiff's motion to set aside the settlement agreement, vacate the order of discontinuance, and re-open the action, and grant Defendants' cross-motion to enforce the settlement agreement.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: New York, New York
August 5, 2011

_____
JAMES L. COTT
United States Magistrate Judge

**Copies have been sent to counsel by ECF.**